DETINUE.                **Martin and Wife vs Poague.**

*Case* 103.                ERROR TO THE GREENUP CIRCUIT.

                        *Slaves.   Husband and wife.   Detinue.*

*May* 9.        JUDGE MARSHALL delivered the opinion of the Court.

Case stated.        By the will of T. Leftwich, who died in 1816, the share of his estate to be allotted, on the division thereof, to his daughter, Sophia Dobyn, then separated from her husband, Jonah Dobyn, was vested in trustees for the support of the said Sophia and her children, in trust for her sole and separate use during her life, exclusive of her husband, and for which her receipt alone to be a sufficient discharge, and from and after her death, in trust for her children then living.   One of the trustees took the control and management of the slaves allotted to Sophia Dobyn, among which were George and Jim, and controlled them until in the year 1821, (previous to which, the Legislature of Virginia had passed an act divorcing said Dobyn and wife,) the control of said slaves was relinquished by the trustees, and assumed by and permitted to remain with Mrs. Dobyn, who, in 1834, some short time after her intermarriage with Stephen Martin, placed Jim and George in the hands of William N. Dobyn, one of the children by her first marriage, and took from him a bond, dated the 30th of March, 1834, whereby he promised two years thereafter to pay her two dollars for the hire of George and Jim, and at the same time to return the two slaves to her at her house in Bedford County, Virginia.   Immediately after this transaction, Wm. N. Dobyn brought the two slaves to Kentucky, and in October, 1834, sold Jim to Robert S. Poague, who afterwards sold him to William L. Poague, against whom this action of detinue was brought by Stephen Martin and Sophia, his wife, in August, 1839.

        The declaration seems to have been founded upon the bailment of Jim by Mrs. Martin to Wm. N. Dobyn, which, together with the subsequent transfer, is set out

at large. But as William L. Poague was no party to that contract, and holds and has always held, as did his vendor, R. S. Poague, in violation of it, and adversely to Mrs. Martin, and as there is no such privity between them, in regard to the slave, under this personal contract respecting him, as there is in the case of land between the lessor and the assignee of the lessee, in respect of the reversion, and as we think there is no estoppel upon Prague, this action cannot be maintained upon the contract but must be sustained, if at all, by title in the plaintiffs, or at least in the wife.

By the will of T. Leftwich, the legal title was undoubtedly vested in the trustees, and the equitable or beneficial interest alone was secured to Mrs. Dobyn. If the legal title remains where it was placed by the will, then we think it clear that the trustees alone could have maintained this action, because they alone had the title, and because the defendant was not liable to the action on the ground of the contract. And if, as is contended, the surrender of the slaves, by the trustees, to Mrs. Dobyn, in 1821, and her long enjoyment of the possession and control of them implies a surrender of the legal title of the trustees to the extent of her equitable or beneficial interest, and thus converted her equitable right to the separate use, for her life, into a legal estate for life, then as the trust must, to the same extent, have been extinguished by a union of the equitable interest of the *cestui que trust*, with the legal title of the trustees; and as Mrs. Dobyn must, therefore, at the time of her marriage with Martin, have been the absolute owner of the slaves, for her life, then by operation of law, (for the law of Virginia on this subject is presumed to have remained unaltered,) that interest vested in Martin upon and in virtue of the marriage, and the action cannot be maintained in the joint names of both, but if maintainable at all, should have been brought in the name of the husband alone, in whom the legal interest is vested.

There being no other admissible hypothesis with regard to the title except one or the other of these two, it follows that in any other aspect of the case, the present action cannot be maintained in the name of Martin and

Slaves, by the will of the father, were vested in trustees for the separate use of a married daughter and her children; she is divorced and marries again, the slaves are hired by her, in Virginia, to a son, who brings them to Kentucky and sells them.—Detinue in the name of the daughter and second husband cannot be maintained against the purchaser—the title is in the trustees —no proof of a surrender of the legal estate to the plaintiffs.

When slaves belong to the wife, on marriage the right vests absolutely in the husband, and he alone can sue.

wife. It is, therefore, deemed unnecessary either to decide between these two hypothesises or to notice the opinions of the Circuit Court in giving or refusing instructions, since, according to the views already presented, the verdict and judgment for the defendant must be sustained, although errors may have been committed in these opinions. For the purpose, however, of avoiding misconstruction of what has been said, we will observe that those cases in which it has been decided that the surrender of the legal title in a chattel or slave, by the administrator of the husband, to the wife, having an equitable interest secured to her, may be implied from circumstances, do not furnish an exact precedent for a similar implication in the present case, because here the legal title is put in trustees, not only for the benefit of the wife, but also for the benefit of her children, after her death.

It is proper also to state that when the case was formerly here, upon the writ of error of Martin and wife, the will of Leftwich was not in the record, but was only vaguely referred to in the evidence; and the question of title was not then presented in the manner in which it now is. Wherefore, without deciding the question made as to the application of the statute of frauds, for the protection of Poague's purchase, by uniting the possession of Wm. N. Dobyn, the loanee, to that of the Poagues, to make out the five years, the judgment is affirmed.

*Beatty* for plaintiffs: *Morehead & Reed* for defendants.

---

COVENANT.

*Case* 104.

*April* 27.

The case stated.